UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**Angela Clemente,**                )
                                    )
       **Plaintiff,**      )
                                    )
       v.                  )   Civil Action No. 13-0108 (JDB)
                                    )
**Federal Bureau of Investigation,** )
                                    )
       **Defendant.**      )
                                    )
_____)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER REQUIRING PROMPT REVIEW AND RELEASE OF ALL NONEXEMPT RESPONSIVE RECORDS AND REQUEST FOR AN OPEN AMERICA STAY**

**INTRODUCTION**

United States Department of Justice ("DOJ"), on behalf of the Federal Bureau of Investigation ("FBI"), by and through undersigned counsel, hereby opposes the Plaintiff's Motion for prompt review and release of all nonexempt records and alternatively requests an Open America Stay pursuant to 5 U.S.C. § 552(a)(6)(c), and *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976).  Plaintiff seeks all records from the FBI file, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, pertaining to Gregory Scarpa, an FBI informant.  The nature of these records requires careful review and processing before they can be released.  Thus, despite its diligent efforts under the exceptional circumstances prevailing in this case, the FBI has not yet been able to complete the processing of Plaintiff's request.  Accordingly, under these circumstances, the Defendant is unable to accommodate Plaintiff's demand and an *Open America* stay of production of records is

appropriate. In addition, the Government proposes a structured plan for the release of responsive records which effectively balances all of the FBI's FOIA obligations.

As of this date, the FBI estimates it has identified approximately 30,000 pages of responsive records. Declaration of David M. Hardy (Hardy Dec.), Section Chief of the Record information Dissemination Section (RIDS), ¶ 27. The FBI is able and has offered to review 2,000 pages a month. This is because the vast bulk of the work still requires action by an individual analyst who must conduct a page-by-page, line-by-line, word-by-word review in order to determine whether the material ultimately can be released. *Id.,* at 12 & 13(a)(ii)(c). The Freedom of Information/Privacy Act (FOIPA) Disclosure Units redact exempt information and note the applicable exemption(s) in the margin of each page and/or prepare deleted page information sheets when pages are withheld in their entireties, all done electronically in the FOIPA Data Processing System (FDPS). During the course of review, the FOIPA Disclosure Units consult with other government agencies, as necessary, for their respective determinations as to the releasability of the other agencies' information contained within FBI records, and refer non-FBI documents to the agencies from which they originated for processing and direct response to the requester. The FOIPA Disclosure Units ensure that FOIA and/or Privacy Act exemptions have been properly applied, that no non-exempt information has been withheld, that exempt information is protected, that all necessary classification reviews have been completed by transferring applicable cases to the Classification Units, and that other government agency information or documents have been properly handled. *Id.,* at 13(a)(ii)(c). Thus, Defendant opposes the Plaintiff's request to have the records processed at a rate of not less than 5,000 pages per month and moves for this *Open America* stay pursuant to 5 U.S.C. § 552(a)(6)(c) on the grounds that exceptional circumstances exist and the FBI has exercised due diligence in

processing pending FOIA requests, including Plaintiff's, and reducing its backlog.  Exceptional circumstances exist because of the tremendous number of FOIA requests filed with the FBI in light of limited resources.  RIDS Legal Administrative Specialists (LAS) must work on more than one request at a time.  Hardy Decl. ¶ 14.

Furthermore, the FBI has demonstrated due diligence in responding to FOIA requests and in reducing its backlog of requests.  These factors, taken together with the high volume of litigation-related work being handled by the FBI, and the serial nature of FOIA processing, pose an exceptional demand on the FBI's finite resources.  Thus, the Court should deny the plaintiff's Motion and grant the FBI's request for a stay.  Defendant respectfully requests that the proposed stay expire on October 31, 2014.

## BACKGROUND

### Plaintiff's FOIA Requests

The Plaintiff filed this lawsuit against the FBI as a result of two FOIA requests.  The first one, dated June 26, 2011, was submitted to the New York FBI Field Office and requests 500 pages from the informant file of Gregory Scarpa, Sr., pertaining to the murders of John Minerva, Michael Imbregamo, Salvatore Scarpa and Matty Ianiello.  *See* Complaint, p. 3-4, at Exhibit 1.  The FBI has processed and released the 500 pages of nonexempt materials in response to Plaintiff's first FOIA request.  Hardy Decl. ¶ 5 & 10.  The second request is dated October 30, 2011, and pertains to all records on or pertaining to Gregory Scarpa wherever they may be located or filed, in whatever format they are maintained.  *See* Complaint, p. 5-6 at Exhibit 5.  This is the request that is currently in dispute.  The FBI reviewed 1,825 pages responsive to

plaintiff's October 30, 2011 request and released 920 pages to plaintiff. Hardy Decl. ¶ 11. Altogether the FBI has processed 1,420 pages regarding this FOIA request.[1]

## STANDARD OF REVIEW

Under the FOIA, federal agencies must respond to document requests within twenty days. 5 U.S.C. § 552(a)(6)(A). However, the Act specifically provides that, in "exceptional circumstances," additional time may be allowed for an agency to process its records. "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(c).

In *Open America v. Watergate Special Pros. Force*, 547 F.2d 605 (D.C. Cir. 1976), the D.C. Circuit construed this section as follows:

> In summary, we interpret Section 552 (a)(6)(c)) to mean that "exceptional circumstances exist" when an agency . . . is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests. In such situation, in the language of subsection (6)(c), "the court may retain jurisdiction and allow the agency additional time to complete its review of the records." Under the circumstances defined above the time limits prescribed by Congress in subsection (6)(A) become not mandatory but directory. The good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act.

*Id*. at 616. The Electronic Freedom of Information Act Amendments of 1996 (E-FOIA) clarified the standard for obtaining a stay. *See Gov't Accountability Project v. U.S. Dep't of Health and Human Servs.*, 568 F. Supp.2d 55, 58 (D.D.C. 2008). In order to obtain a stay,"due diligence" in

---

[1] All of the Plaintiff's requests have been assigned one FOIPA number because they were for the same subject and encompassed similar information. Hardy Decl. ¶ 9.

4

processing requests is always necessary.  *See Gov't Accountability*, 568 F. Supp.2d at 63.  Consistent with *Open America*, the amendments exclude from exceptional circumstances any "delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog" of pending requests.  E-FOIA Amend. of 1996, Pub. L. No. 104-231; § 7(c), 110 Stat. 3048 (codified as amended at 5 U.S.C. § 552 (a)(6)(C)(ii)).

Following *Open America* and the 1996 amendments, courts' interpretation of the requirements "has evolved into four conditions that must be satisfied to warrant granting an *Open America* stay: (1) when an agency is burdened with an unanticipated number of FOIA requests; and (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; and (3) when the agency shows that it is exercising due diligence in processing the requests; and (4) the agency shows reasonable progress in reducing its backlog of requests." *Elec. Frontier Found. v. Dep't of Justice*, 563 F. Supp.2d 188, 193 (D.C. Cir. 2008).  Courts have also considered additional factors in determining whether there are exceptional circumstances, including: the complexity of the request, newly imposed statutory or regulatory burdens on agencies, and other impediments that might prevent an agency from swiftly processing a request.  *Buc v. FDA*, 762 F. Supp.2d at 66 (citing *Gov't Accountability*, 568 F. Supp.2d at 59).

Finally, agency affidavits and declarations in support of a stay under *Open America* are given "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Nat'l Sec. Archive v. S.E.C.*, 770 F. Supp.2d 6, 9 (D. D.C. 2011) (quoting *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp.2d at 117 (D. D.C. 2007)).

## ARGUMENT

### The FBI has Demonstrated Exceptional Circumstances

To establish "exceptional circumstances," the agency must show both (a) that it is "deluged with [a] volume of requests . . . vastly in excess of that anticipated by Congress," and (b) that "existing resources are inadequate to deal with [the] volume of such requests within the [statutorily prescribed] time limits." *Buc v. FDA*, 2011 U.S. Dist. Lexis 18802, *11 (D. D.C. 2011) (citing *Open Am.*, 547 F.2d at 616.)  Various circumstances outside the raw volume of outstanding requests may be relevant to the determination as to whether "exceptional circumstances" exist in a given case, including: (a) an agency's efforts to reduce the number of pending requests; (b) the existence and amount of classified material; (c) the size and complexity of other requests processed by the agency; (d) the resources being devoted to the declassification of classified material of public interest; and (e) the number of requests for records by courts or administrative tribunals.  *Gov't Accountability*, 568 F. Supp.2d at 59. Critically, however, the term "exceptional circumstances" is expressly defined to generally exclude "delay[s] that result[] from a predictable agency workload of requests." 5 U.S.C. § 552(a)(6)(C)(ii); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp.2d 246, 259 n.4 (D. D.C. 2005) ("An agency must show more than a great number of requests to establish exceptional circumstances under the FOIA.").  If an agency can show no more than a "predictable agency workload of requests," exceptional circumstances will not lie "unless the agency [further] demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).

Exceptional circumstances exist to warrant a stay because of the following reasons.

Although plaintiff makes several seemingly appealing arguments to demonstrate the FBI's ability to process her requests expeditiously, all of plaintiff's arguments overlook a critical and simple fact: the FBI's FOIA /Privacy Act workload today is dramatically more complex and significantly more demanding than it was five, let alone ten or more years ago.  While it is important to understand the FBI's rationale for seeking an *Open America* stay, focusing solely on the number of requests received, the number of pages assigned for processing, or the number of pending cases, only partially explains why the FBI needs a considerable period of time to respond to plaintiff's requests.  Of equal or greater importance to understanding the FBI's position is an appreciation for the nature and complexity of the requests the FBI has been receiving in the last several years.  The FOIA/Privacy Act landscape has changed dramatically, and responding to these requests has demanded a significant increase in FBI resources, time, and effort when compared to previous years.  Hardy Decl. ¶ 6.

RIDS has an obligation to faithfully administer the FOIA program in accordance with statutes and regulations, and by treating all requesters fairly and equitable, giving none an undue advantage over any others.  RIDS follows the rule of "first in-first out" using a multi-track queue system. Exceptions to the "first in-first out" rule are made by RIDS in rare circumstances: for those requesters who are granted expedited processing by either the FBI or DOJ in accordance with DOJ FOIA regulations for expedited processing; and for those requesters who initiate litigation and in which a Court orders (or the parties agree to) priority processing and release by imposing a framework of expedited production deadlines.  Another policy designed to ensure fairness among requesters involves the "behemoth" requests.  Because RIDS has determined that no requester should have to wait more than three years before the FBI provides a complete

response, it will continue to commit the necessary resources to accomplish that goal.  This is a goal that RIDS is continually striving to achieve.  Hardy Decl.¶ 7.

## Factors Affecting The Processing of Plaintiff's Requests

Historically, the FBI repeatedly has sought additional funding for the creation of new FOIA positions.  For example, Congress appropriated funds in the 1997 fiscal budget providing for 129 additional employees, and in the 1998 fiscal budget, providing for 239 additional employees.  In 2003, the FBI moved from paper processing to data processing.  Many of these additional employees transitioned to document scanning to support the FBI's new automated FOIA process.  Hardy Decl.¶ 32.  Despite these staffing constraints, RIDS made significant strides in reducing its backlog of FOIA and Privacy Act requests.  For perspective, at the end of FY 1998, there were 10,816 pending requests in various stages of processing.  By the end of FY 2005, the number of pending requests had been reduced to 1,786.  In order to achieve this reduction in its backlog level, RIDS implemented various steps designed to streamline its work.  These steps include the utilization of direct on-line computer searches to locate responsive records, use of form letters, formation of specific teams to address backlog issues, processes to handle consultations and referrals to other Government agencies, and the creation of the Litigation Support Unit to handle all FOIA/Privacy Act litigation in RIDS.  *Id.*  RIDS also implemented the use of its FOIPA Document Processing System ("FDPS") to electronically process requests.  All of the units responsible for responding to FOIA and Privacy Act requests, as well as the Office of the General Counsel's FOIA Litigation Unit, DOJ's Office of Information Policy, and certain other employees in the FBI have access to FDPS, which also reduces the amount of time spent physically transferring documents throughout the processing of a request, and is another time-saving step implemented by the FBI.  In addition to these efforts,

RIDS's ability to reduce the backlog was aided by a steady decline in the number of FOIA and Privacy Act requests received by the FBI from FY 2001 through FY 2005.  (Intake fell as low as an average of 906 requests per month in FY 2004 and an average of 911 requests per month in FY 2005.)  *Id.*

In 2009, as a result of new Department of Justice guidelines, the average size of an FBI FOIA/Privacy Act request jumped from 500 to 1,000 pages, in effect doubling the work required to complete a request.  The FBI responded by funding 35 contract employees to assist the FOIA program.  Hardy Decl. ¶ 33.

Despite the increase in the size of each FOIA/Privacy Act request, at the end of FY 2011 the number of pending requests was only 1,179.  Hardy Decl. ¶ 34.  While the size of a FOIA/Privacy Act request has increased, the number of requests received by the FBI has also significantly risen.  For example, the FBI received an average of 911 requests in FY 2005.  In FY 2012, the FBI received a total of 20,602 FOIA and Privacy Act requests, or an average of 1,716 requests per month.  With two months left in FY 2013, the FBI is on the same pace as FY 2012.  For FY 2013 thus far (October 2012 through today), the FBI has received 17,692 FOIA and Privacy Act requests, or an average of 1,744 requests per month.  As of today, there are a total of 5,875 pending requests.  There are approximately 2,659 requests, consisting of 3.0 million pages of information, currently assigned to the five FOIPA Disclosure Units for review.  Among the requests currently pending processing by the FOIPA Disclosure Units are:

- 1,861 small –queue requests, each of which involve between 1 to 500 pages of potentially responsive records;
- 458 medium-queue requests, each of which involve between 501 to 2,500 pages of potentially responsive records;

- 223 large-queue requests, each of which involve between 2,501 to 8,000 pages of potentially responsive records; and

- 117 extra large-queue requests, each of which are in excess of 8,000 pages of potentially responsive records.

*Id.*

The remaining approximately 3,216 requests, consisting of an estimated 500,000 pages of potentially responsive records, are pending assignment to a FOIPA Disclosure Unit for processing.  Hardy Decl. ¶ 35.

A finite pool of human resources who must manually process the materials can only accomplish so much.  *See Elec. Frontier Found. v. DOJ*, 563 F. Supp.2d 188 (D. D.C. 2008) (citing *Elec. Frontier Found.*, 517 F. Supp.2d 111, 119 (stating that the Record Section "has been 'deluged with a volume of requests for information vastly in excess of that anticipated by Congress,' and that its 'existing resources are inadequate to deal with the volume of such requests within the time limits'" (quoting *Open America*, 547 F.2d at 616.)); *see also Open America*, 547 F.2d at 613 (discussing an FBI backlog of more than 5,000 requests that had to be processed by less than 200 employees and finding the number of requests had been unforeseen by Congress); *Edmonds v. FBI*, No. 02-1294, 2002 U.S. Dist. Lexis 26578, 2002 WL 32539613, at *2 (D. D.C. 2002) (finding that 1,300 new requests each month, in addition to the backlog of pending requests, administrative appeals and litigation  constituted exceptional circumstances).

### The FBI has Demonstrated Due Diligence in Processing FOIA Requests

Under D.C. Circuit law, an *Open America* stay may be granted "(1) when an agency is burdened with an unanticipated number of FOIA requests; and (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; and (3) when the

agency shows that it is exercising 'due diligence' in processing the requests; and (4) the agency shows 'reasonable progress' in reducing its backlog of requests." *Wilderness Soc'y v. United States DOI*, Civ. A. No. 04-650 (CKK), 2005 U.S. Dist. Lexis 20042, at *31-32 (D.D.C. 2005) (citing *Williams v. Fed. Bureau of Investigation*, Civ. A. No. 99-3378 (AK), 2000 U.S. Dist. Lexis 17493, at *4 (D.D.C. Nov. 30, 2000) (emphasis in original) and *Summers v. Dep't of Justice*, 925 F.2d 450, 452 n.2 (D.C. Cir. 1991) (noting first three factors)).  As set forth above, where an agency's delay is the result of a predictable backlog of requests, the agency must demonstrate that it is making "reasonable progress in reducing its backlog of pending requests" in order to establish extraordinary circumstances. 5 U.S.C. § 552(a)(6)(C)(ii).  Moreover, as a general principle under the FOIA, an agency is only entitled to a stay of proceedings if it demonstrates that it is "exercising due diligence" in processing requests. See id. § 552(a)(6)(c).

In this case, an *Open America* stay is warranted because the FBI has demonstrated due diligence in processing its requests and reasonable progress in reducing its backlog.  In addition, even if the Court were to find that the increases in requests were predictable, the FBI would still be entitled to a stay because of its progress in reducing its backlog.  Since the FBI usually receives a large number of FOIA/Privacy Act requests each year, RIDS already faces a great deal of pressure to process and respond to the requests.  Moreover, the number and complexity of the requests has increased significantly over the past year.  Hardy Decl. ¶32-35.  The FBI has been reducing its backlog of requests over the years even as there had been an increase in volume and complexity of the requests, along with the increased burden of multiple litigation deadlines.  *Id.* Despite the heightened burdens currently on RIDS, the FBI is still processing FOIA requests in a reasonable amount of time.  The FBI has been inundated with an increasing number of FOIA requests over the past few years, as well as an increasing number of those requests that are

11

administratively complex and thus take longer to process.  *Id.*

Considering that the FBI typically processes over 17,000 FOIA requests per year, the increase is a substantial tax on the FBI's limited resources to process the requests.  *Id.*, at ¶ 34; *see also Elec. Frontier*, 563 F. Supp.2d at 194.  Additionally, litigation deadlines in unrelated cases are monopolizing RIDS personnel and resources, and the FDPS is scheduled to be updated, which will impede the processing of FOIA requests.  In *Gov't Accountability*, the court noted that the constraint placed on an agency as a result of court-mandated document productions was an important factor, but found that the agency had failed to demonstrate with specificity that it had come under increased burdens resulting from litigation.  568 F. Supp.2d at 61.  By contrast, in *Nat'l Sec. Archive*, the court held that the Securities and Exchange Commission had demonstrated exceptional circumstances based in part on a showing that the SEC had to process "tens of thousands of documents" due to obligations stemming from other litigation.  770 F. Supp.2d at 9.

Here, in addition to its high volume of FOIA requests that need to be processed, the FBI is currently a defendant in a number of FOIA lawsuits, placing increasingly high demands on RIDS for the expedited processing and release of records.  Hardy Decl., ¶ 38(a-e).  Since the same RIDS personnel work on existing FOIA and Privacy Act requests as well as document production for litigation, RIDS' resources are constrained when it is involved in a large number of lawsuits.  *Id*.  In addition to the litigation burden, the scheduled update to the FDPS – which will further streamline an already complex and efficient system –caused a slowdown in processing for nearly a month, one week of which the system was down entirely.  *Id*., ¶ 30.

The FBI has also shown due diligence, specifically with regard to Plaintiff's FOIA requests at issue here.  To date, the FBI has released approximately 920 pages of documents

responsive to Plaintiff's request for information.  This is in addition to the 500 pages released which completed the response to Plaintiff's first request dated June 26, 2011.  *Id*., at ¶¶10 & 11.  The FBI has committed to release 2,000 pages per month and to provide the Court and Plaintiff status reports every 60 days that report the volume of information processed since the previous status report, and update and revise its estimates about volume of responsive information to be processed and amount of time to complete processing.  *Id*., at ¶ 39.

## CONCLUSION

For the reasons set forth above, the FBI respectfully requests that the Court deny Plaintiff's Motion for Prompt Review and stay the proceedings to give the FBI the opportunity to review and process the remaining material.  The FBI takes very seriously its responsibilities with regard to the administration of the FOIA/Privacy Act program.  All reasonable efforts are being made to timely process requests that are either at the administrative stage or those that are in litigation, including plaintiff's requests.  The FBI's proposal, as described above, has carefully balanced the volume and inter-relatedness of the responsive records and plaintiff's interests, while also recognizing and preserving the rights of other litigants and requesters in access to the information they seek.  As detailed above, the extremely high volume of other administrative and litigation-related  FOIA /Privacy Act work being handled by RIDS and the serial nature of FOIA/Privacy Act  processing,  pose an exceptional demand on RIDS's finite resources, which the FBI has attempted to address through the above-articulated proposed processing method and schedule.  Hardy Decl.  ¶ 40.

August 6, 2013                                               Respectfully submitted,

                                            RONALD C. MACHEN JR, D.C. BAR # 447889
                                            United States Attorney
                                            for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Acting Civil Chief

By: /s/
_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 252-2520