UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGELA CLEMENTE,                )
                                )
                                )
        Plaintiff,               )
    v.                          )  Civil Action No. 13-cv-108 (TFH)
                                )
                                )
FEDERAL BUREAU OF               )
INVESTIGATION,                  )
                                )
        Defendant.               )

**Amended Memorandum Opinion**[1]

Plaintiff Angela Clemente filed the present suit against the Federal Bureau of Investigation ("FBI") seeking injunctive relief under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Clemente alleges that the FBI failed to comply with the statutory deadlines to respond to two FOIA requests Clemente submitted in 2011. Both requests relate to the relationship between the FBI and several of its informants in the world of organized crime. This Memorandum concerns Clemente's Motion for an Order Requiring Prompt Review and Release of All Responsive Records [ECF No. 11]; the FBI's Opposition to Plaintiff's Motion for An Order Requiring Prompt Review and Release of All Nonexempt Responsive Records and Request for an *Open America* Stay [ECF No. 13] ("FBI Mot."); and Clemente's Reply to Defendant's Opposition to Plaintiff's Motion to Expedite Review and Release of all Nonexempt Materials and Opposition to Defendant's Motion for an *Open America* Stay [ECF No. 14] ("Pl.'s Reply"). On October 22, 2013, this Court heard oral argument on the parties' motions. After careful consideration of the entire record, the Court orally granted Clemente's

---

[1] This Memorandum Opinion was amended on October 24, 2014 to correct typographical and citation errors. The Order announced from the bench at the public hearing held on October 22, 2013 stands.

motion and denied the FBI's motion for an *Open America* stay. The Court then ordered the FBI to process 5,000 pages a month responsive to Clemente's FOIA request, beginning November 15, 2013. This Memorandum sets forth the reasoning behind that decision.

## I. Background

Angela Clemente is a forensic analyst who has conducted extensive research on alleged corruption resulting from the collaboration between the FBI and its so-called "top echelon" informants. Pl.'s Mem. of P. & A. in Supp. of Mot. for an Order Requiring Prompt Review and Release of All Nonexempt Responsive Records 3 [ECF No. 11] ("Pl.'s Mem. of P. & A."). For the past ten years, Clemente's research has focused on Gregory Scarpa, a high ranking member of the mafia who served as an FBI informant as early as 1960. Pl.'s Reply Ex. 1, Clemente Decl. ¶ 3 [ECF No. 14-1]. Clemente states that her research has revealed that Scarpa's handler, Supervisory Special Agent Lindley Devecchio, and others at the FBI were complicit in or actively aided the cover-up of murders and other violent crimes committed by Scarpa and other FBI informants. Pl.'s Mem. of P. & A. 3-4. These allegations have been the focus of a number of media reports and an ongoing investigation by the Office of the Inspector General for the Department of Justice, with which Clemente is assisting. *Id.* at 7; Pl.'s Reply 3, 4. Clemente also conducts research on behalf of relatives of persons allegedly victimized by Scarpa and other informants. Clemente Decl. ¶ 4 [ECF No. 14-1].

Clemente believes that her work will uncover more evidence of systemic corruption involving the FBI and its informants associated with organized crime, but she is concerned that she may not live long enough to complete her research. Pl.'s Mem. of P. & A. 7. Clemente's liver was "gravely

damaged through medical surgery and she is desperately in need of a liver transplant," but her doctors have advised her "that her prospect of getting one in time is dim." *Id.* Therefore, Clemente "faces a very limited lifespan without much prospect that she will be able to carry further" with her research. *Id.*

On June 26, 2011, Clemente submitted a request to the New York FBI Field Office for records concerning Gregory Scarpa and the murders of John Minerva, Michael Imbergamo, Salvatore Scarpa, and Matty Ianiello. Compl. ¶ 8. This request was limited to 500 pages to facilitate a faster response. Pl.'s Mem. of P. & A. 5. On October 30, 2011, Clemente submitted a second request for "all records on or pertaining to Gregory Scarpa wherever they may be located or filed, in whatever form or format they are maintained." *Id.* at 6.[2] At the time Clemente filed this lawsuit on January 25, 2013, she had received no records responsive to either request. *Id.* On June 28, 2013, six months after this suit was filed and two years after she had made her original request, the FBI produced the 500 pages responsive to Clemente's first FOIA request. *Id.*

The FBI has identified approximately 30,000 additional documents responsive to the plaintiff's request. FBI Mot. 2. By the time the FBI filed its response to Clemente's motion, the FBI represented that it had processed a total of 1,420 pages responsive to Clemente's FOIA request and had released 920 pages to Clemente. *Id.* at 3-4.

The FBI initially offered to process Clemente's request at the customary rate of 500 documents per month, but Clemente argues that at that rate she is likely to die before the documents are turned over to her. Pl.'s Mem. of P. & A. 2. The FBI later raised its offer to 1,500 documents per

---

[2] The plaintiff's Complaint initially included a request for a public interest fee waiver, which the FBI has now agreed to grant. *See* FBI Proposed Scheduling Order 1 [ECF No. 7].

month. *See* FBI Proposed Scheduling Order 2 [ECF No. 7]. Clemente argues that the processing rate should instead be not less than 5,000 pages per month in light of her ill health and the fact that the documents relate to an issue of great importance to the public. Pl.'s Mem. of P. & A. 7. In support of her motion, Clemente attached a declaration describing the nature of her research and several newspaper articles describing recently uncovered crimes allegedly committed by FBI informants, to show that her work is in the public interest. Pl.'s Reply Ex. 1 [ECF No. 14-1]; Pl.'s Mem. of P. & A. Ex. 2 [ECF No. 11-2].

The FBI opposed the plaintiff's motion and cross-moved for an *Open America* stay. *See* FBI Mot. 1. The defendant argues it is entitled to a stay "because of the tremendous number of FOIA requests filed with the FBI in light of limited resources." *Id.* at 3. The FBI argues that reviewing the relevant documents will be time-consuming due to the sensitive nature of the materials Clemente has requested, but states that it has nevertheless worked diligently to respond to the requests. *Id.* at 11-12. The FBI also offered to increase its processing rate to 2,000 pages a month. *Id.* at 2, 13. The FBI's brief did not address what, if any, impact Clemente's declining health should have on the Court's decision to stay her request. In her reply, Clemente argues that that the FBI does not meet the standards for an *Open America* stay and rejects the FBI's offer to process 2,000 pages a month. Pl.'s Reply 2.

## II. Standard of Review

Under FOIA, an agency responding to a request must:

[D]etermine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the

reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination.

5 U.S.C. § 552(a)(6)(A)(i). The D.C. Circuit has held that while an agency need not produce all of the requested documents within the statutory time period, "the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013). If the agency fails to appropriately respond within the statutory time limit, the requester shall be deemed to have exhausted administrative remedies and may sue without seeking an administrative appeal. *Id.* at 184-85 (discussing 5 U.S.C. § 552(a)(6)(C)(i)).

After the requester files a lawsuit, a court may extend an agency's time to respond to the request if the agency can "show exceptional circumstances exist," and that the agency "is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). FOIA defines "exceptional circumstances" specifically to exclude "a delay that results from a predictable agency workload of [FOIA] requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C)(ii). In *Open America v. Watergate Special Prosecution Force*, the D.C. Circuit found that an agency is entitled to a stay if the agency is:

> [D]eluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the [statutory time limit]. . . .

547 F.2d 605, 616 (D.C. Cir. 1976). Other circumstances warranting an *Open America* stay may include "an agency's efforts to reduce the number of pending requests, the amount of classified material, [and] the size and complexity of other requests processed by the agency." *Elec. Privacy*

*Info. Ctr. v. FBI*, 933 F. Supp. 2d 42, 46 (D.D.C. 2013) ("*EPIC*") (quoting *Elec. Frontier Found. v. Dep't of Justice*, 517 F. Supp. 2d 111, 117 (D.D.C. 2007)).

### III. Discussion

#### A. The defendant's request for an *Open America* stay

The FBI does not dispute that Clemente has exhausted administrative remedies. Therefore, the Court will consider whether the FBI is entitled to more time to respond to her request. The FBI must make two showings before the Court may grant a stay of the proceedings: (1) that exceptional circumstances exist; and (2) that the agency is "exercising due diligence" in processing Clemente's request. *EPIC*, 933 F. Supp. 2d at 46-47 (quoting 5 U.S.C. § 552(a)(6)(C)(i)). The FBI argues that it satisfies both requirements and asks the Court to grant a stay for an unspecified amount of time. FBI Mot. 13. First, the FBI asserts that its FOIA workload is "dramatically more complex and significantly more demanding" than in the past, but that it has nevertheless "made significant strides in reducing the backlog of FOIA and Privacy Act requests." *Id.* at 7, 8. Second, the FBI argues that it has "shown due diligence specifically with regard to Plaintiff's FOIA requests at issue here." *Id.* at 12. As set forth below, the Court finds that the FBI failed to show exceptional circumstances exist in this case and therefore does not address the FBI's second argument. *See EPIC*, 933 F. Supp. 2d at 47.

The FBI's arguments in favor of a finding of exceptional circumstances closely mirror its arguments in *EPIC*, decided in March of 2013. In both cases, the FBI attached affidavits purporting to show that the number of FOIA requests and the size of those requests have "significantly risen," but that the FBI is nevertheless making progress in eliminating its backlog. FBI Mot. 9; *EPIC*, 933 F.

Supp. 2d at 47. Clemente disputes the FBI's characterization of its backlog and its progress in processing its requests, arguing that though the FBI receives a high number of FOIA requests, the volume of requests cannot be considered "unanticipated." Pl.'s Reply 9.

To show the increase in requests, the FBI states that in 2005 it received an average of 911 FOIA requests a month, but in 2012 the number had increased to an average of 1,716 requests a month. FBI Mot. 9. The FBI does not provide monthly request data for the intervening years. However, the public data provided by the Department of Justice shows that although there are more FOIA requests now than in 2005, the number of requests has actually dropped by over 25% between FY 2008 (17,241 requests) and FY 2012 (12,783 requests).[3] These numbers indicate that the FBI is not "deluged with [a] volume of requests . . . vastly in excess of that anticipated by Congress." *EPIC*, 933 F. Supp. 2d at 47 (quoting *Open America*, 547 F.2d at 616).

The FBI argues that in addition to looking at raw numbers, this Court should also consider the increase in the average size and complexity of the FBI's FOIA requests. FBI Mot. 9. But as the FBI acknowledges, the increase in size of requests is due to a change in the Department of Justice's own regulations. *Id.* In 2009, the Department of Justice issued new FOIA guidelines, to which the FBI attributes the increased average size of requests. *Id.* As Judge Kollar-Kotelly noted in *EPIC* in response to the same argument, the FBI does not explain how a change in its own agency's policy "should support a finding for exceptional circumstances, as opposed to being considered part of the

---

[3] The Department of Justice data is not directly comparable because the data provided by the FBI includes Privacy Act cases, but is still helpful in showing the "overall trend of decreased requests." *EPIC*, 933 F. Supp. 2d at 47. The data can be found at http://www.foia.gov/data.html#foiaReportsTable.

'predictable workload' the statute specifically states does not justify a stay." *EPIC*, 933 F. Supp. 2d at 48. As for the increased complexity of recent requests, other courts have found that "there is simply insufficient evidence in the record to draw any concrete and meaningful conclusions as to the composition of the [FBI's] workload today in comparison to years past, at least in terms of complexity." *Id.* (quoting *Buc v. Food & Drug Admin.*, 762 F. Supp. 2d 62, 68 (D.D.C. 2011)).

The FBI also points to the fact that it is the defendant in 144 FOIA lawsuits, and states that in "a number of these cases" the FBI must devote significant resources to comply with court ordered deadlines. FBI Mot. Ex. 1, Hardy Decl. ¶ 38(a)-(e) [ECF No. 13-1]. But this "anecdotal evidence" does not demonstrate anything about the FBI's "workload as it has developed over time." *EPIC*, 933 F. Supp. 2d at 48 (quoting *Buc*, 762 F. Supp. 2d at 69). Without more information, this Court cannot conclude that obligations resulting from various lawsuits are more than the predictable workload of the agency.

Because the FBI cannot show that the delay is caused by something other than the "predictable agency workload," it must demonstrate that it has made "reasonable progress in reducing its backlog of pending requests." *Id.* at 49 (quoting 5 U.S.C. § 552(a)(6)(C)(ii)). The FBI states that it has taken a number of steps to streamline its process and reduce the backlog. FBI Mot. 10-13. But according to the publicly available data,

> the number of FOIA requests received by the FBI increased by 15% in FY 2012, but the backlog of requests increased by 65%. For broader context, consider that the FBI backlog of FOIA requests increased by 55% between FY 2008 (1476 pending requests) and FY 2012 (2296 pending requests), despite a 27% *decrease* in new FOIA requests.

*EPIC*, 933 F. Supp. 2d at 49 (citing DOJ data). In *EPIC*, Judge Kollar-Kotelly found that though the "FBI's efforts to increase efficiency of its systems" was "certainly commendable," those efforts had

not led to sufficient "reasonable progress" to warrant a stay. *EPIC*, 933 F. Supp. 2d at 49. This Court agrees and finds that the FBI has not shown exceptional circumstances or sufficient progress in reducing its backlog to warrant an *Open America* stay.

### B. The plaintiff's proposed production schedule

Having determined that a stay is not appropriate, this Court must now decide whether to grant Clemente's request that the FBI process 5,000 pages per month. Clemente argues that two related circumstances in this case warrant rapid processing. First, the records "relate to an issue of national importance," specifically, the alleged "pervasive corruption in the FBI's collaboration with Top Echelon Mafia informants in murderous activities." Pl.'s Mem. of P. & A. 7. Second, Clemente is terminally ill, and "[g]iven the status of Clemente's health, the public interest in securing their prompt disclosure will be thwarted by further delay." *Id.* at 11.

The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Memphis Pub. Co. v. FBI*, 879 F. Supp. 2d 1, 6 (D.D.C. 2012) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). In this case, Clemente is investigating very serious allegations of corruption. There has been additional public attention on the issue following the trial of James "Whitey" Bulger, which brought to light new allegations of widespread corruption in the FBI's handling of its organized crime cases. *See* Pl.'s Reply 4-5. In 2006, Agent Devecchio, the primary subject of Clemente's investigation, was charged with aiding and abetting four murders. Pl.'s Mem. of P. & A. 4. The case was dismissed when the prosecution's chief witness, Scarpa's former mistress, was found to lack credibility. *See Clemente v. FBI*, 854 F. Supp. 2d 49, 54 (D.D.C.

2012) (discussing the Devecchio prosecution). Clemente has studied these issues for the past ten years, and her knowledge of the facts and the major players makes her a valuable resource for law enforcement and others investigating alleged FBI corruption. Clemente attached a June 30, 2013 *New York Times* article explaining that her research has assisted in Devecchio's prosecution and in an ongoing investigation conducted by the Office of the Inspector General for the Department of Justice. *See* Pl.'s Mem. of P. & A. Ex. 2, Alan Feuer, *An Investigation of the F.B.I., by an Unlikely Sleuth*, N.Y. Times, June 30, 2013 [ECF No. 11-2]. Clemente also "represents persons whose family members were victims" of Scarpa's alleged crimes and who have "presently pending legal cases." Pl.'s Reply Ex. 1, Clemente Decl. ¶ 4 [ECF No. 14-1].

In Clemente's previous FOIA lawsuit against the FBI, Judge Friedman noted that Clemente has "shown considerable capacity to disseminate information to the public." *Clemente v. FBI*, 741 F. Supp. 2d 64, 76-77 (D.D.C. 2010). The Court has reviewed Clemente's medical records to verify the extent of her illness, and the Court is concerned that if the FBI processes documents at the rate it has proposed, Clemente may not be able to complete her important research. As Clemente has noted, her "June 26, 2011 request was not processed at all until after her lawsuit was filed in 2013, and it took two years to produce a mere 500 pages." Pl.'s Reply 11. The D.C. Circuit has found that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (quoting *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)). A court therefore may use its equitable powers to require the agency to process documents according to a court-imposed timeline. *See Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d at 38 (noting "relevant case law establishes that courts have the authority to impose concrete deadlines on

agencies that delay the processing of requests meriting expedition" (citing *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260–61 (D.D.C. 2005))); *see also, e.g.*, *EPIC*, 933 F. Supp. 2d at 50 (setting deadlines for processing documents following denial of *Open America* stay); *Buc*, 762 F. Supp. 2d at 73 (same).

Clemente's request that the FBI process 5,000 pages a month is higher than the rate would be in an ordinary case, but the FBI has successfully processed documents at that rate in other cases. *See, e.g.*, Joint Status Report, *Lardner v. FBI*, No. 03-cv-874 (D.D.C. Aug. 1, 2012). The Court is cognizant that the FBI's resources are limited, but finds that Clemente's proposed processing rate is reasonable in light of the importance of her work and the possibility that she may have only a limited time in which to do it. Therefore, the Court has ordered the FBI to process 5,000 documents per month responsive to the plaintiff's request and to produce responsive, non-exempt documents on a rolling basis. The Order became effective on November 15, 2013. This Court further orders that the parties shall advise the Court in writing of the status of this matter no later than February 15, 2014.

October 24, 2014

_____
Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE